**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

_____

IN RE:

RICHARD G. BIRCHALL,                          CHAPTER 7
            DEBTOR                             CASE NO. 07-17294-WCH

_____


**MEMORANDUM OF DECISION ON MOTION BY SUZANNE D'AMOUR FOR AN
ORDER OF ABSTENTION AND DISMISSAL PURSUANT TO 11 U.S.C. § 305 AND
MOTION OF DEBTOR TO ORDER JUDGMENT CREDITOR TO FORTHWITH TAKE
ALL STEPS NECESSARY TO SECURE THE IMMEDIATE RELEASE OF THE
DEBTOR FROM  INCARCERATION**


## I.  INTRODUCTION

The matters before the Court are the Motion by Creditor, Suzanne D'Amour, For An

Order Of Abstention And Dismissal Pursuant to 11 U.S.C. § 305, Debtor's Motion Brought On

An Expedited Basis To Order Judgment Creditor To Forthwith Take All Steps Necessary To

Secure The Immediate Release Of Debtor From Incarceration, and Suzanne D'Amour's

Opposition To And Motion To Strike Debtor's Motion.  By these motions Suzanne D'Amour

(the "Creditor") seeks in this second Chapter 7 case of Richard Birchall (the "Debtor") another

order granting abstention.[1]  Given that the facts and circumstances of the dispute between the

Debtor and the Creditor are largely the same in this case as they were in Birchall I, as more fully

detailed in my findings of fact and conclusions of law set forth below, I will enter an order

granting the Creditor's request for abstention.

_____

[1]See In re Birchall, Case No. 07-13232-WCH ("Birchall I").

1

## II. BACKGROUND

In Birchall I, the Hon. Joan N. Feeney issued a Memorandum, see In re Birchall, Case

No. 07-13232-WCH, 2007 WL 1992089 (Bankr. D. Mass. July 3, 2007) (the "Decision"), in

which she explains the background of the dispute between the Debtor and the Creditor.  By way

of a brief summary, the Creditor obtained a judgment against the Debtor in the amount of

$2,854,542.74 in July, 2005.[2]   In December, 2006, the Creditor brought a supplementary process

proceeding against the Debtor in state court.  Four months later, the state court conducted an

evidentiary hearing to determine the Debtor's ability to pay the judgment.  It concluded that the

Debtor was able to pay, and after he did not, the state court ordered the Debtor incarcerated.

Shortly thereafter, the Debtor filed Birchall I.

The next day, the Creditor filed her Emergency Motion for Determination That

Automatic Stay Does Not Apply To Debtor's Current Incarceration.  The Debtor then filed

Debtor's Motion Brought On An Expedited Basis To Order Judgment Creditor to Forthwith

Take All Steps necessary To Secure The Immediate Release Of Debtor From Incarceration.  In

the Decision and corresponding order, Judge Feeney denied the Creditor's motion and granted

the Debtor's motion, albeit with certain conditions related to his release from jail.  Judge Feeney

cautioned that the Debtor's suspicious telephone calls warranted a further investigation and that

if the Debtor transferred any property postpetition or failed to comply with his duties as a Debtor

his discharge would be denied or his case dismissed.

Thereafter, the Debtor moved to amend the Decision and order to remove the conditions

---

[2]The Supreme Judicial Court of Massachusetts disbarred the Debtor in 2006 based, in part, upon the the facts underlying the judgment that the Creditor obtained.  See In re Richard G. Birchall, No. BE-2006-023, 22 Mass. Att'y Disc. R. ___ (2006).

related to his release and the Creditor filed an objection.  At the hearing on the motion and

objection, I also considered a communication I had received from the state court judge which I

indicated involved the state police and certain off-shore accounts.  Additionally, I reviewed an

affidavit of counsel to the Creditor in which she represented that she had significant evidence to

demonstrate that the Debtor had made several transfers of money postpetition and had recruited

colleagues to assist in hiding his assets, all in violation of the Bankruptcy Code, the Decision and

the corresponding order.  Based upon the motion, objection, correspondence and affidavit, I

found that although I continued to be concerned about whether the Debtor's incarceration for

civil contempt violated the automatic stay, in the end it was in the best interest of all parties to

have this matter decided in state court.  As such, I entered an order dismissing the case under 11

U.S.C. § 305.  The Debtor never filed his Schedules and Statement of Financial Affairs in

Birchall I as I dismissed the case prior to the filing deadline.  The Debtor did not seek

reconsideration of or appeal from that determination.

On November 13, 2007, the Debtor filed the present case.  He again filed a motion for an

order requiring the Creditor to secure the Debtor's release from jail (the "Stay Motion").  The

Debtor explains that since the dismissal of Birchall I, the Creditor has received 1.58 million

dollars as a result of the Debtor disclosing the existence of an account which contained funds the

Debtor managed for other clients.  The Debtor argues that he should be released in order to

obtain the benefits of the automatic stay to which he is entitled.

In response to the Stay Motion, the Creditor filed a pleading opposing the Stay Motion

and moving for an order striking the Motion on the grounds that there is no basis, statutory or

otherwise, for me to order the Creditor to obtain the release of  the Debtor from jail.  With

3

respect to the partial payment she received between the end of Birchall I and the start of this

case, the Creditor contends that it was only through her hard work that the money was

discovered.  The Creditor explains that she is making progress in the state court case and if the

Debtor were released at this time, it would destroy any hope she has of obtaining any further

recovery.

The Creditor also filed a motion for an order of abstention and dismissal on the grounds

that by his Motion, the Debtor simply is seeking reconsideration of my order granting abstention

in Birchall I ("Abstention Motion").  She asserts that the litigation between the parties should

remain in state court as it is only because of the Debtor's incarceration that she has made so

much progress in discovering assets of the Debtor.  She describes that she has obtained various

records and recordings of telephone conversations of the Debtor while incarcerated and it was

only through that monitoring that she was able to discover the existence of the bank account

which proceeds she has applied to her claim.  Specifically, in the affidavit of her counsel

attached to the Abstention Motion, counsel explains that one of the items that has helped them in

their search was a letter which the Debtor wrote on the day I dismissed Birchall I.  Exhibit 1 of

her affidavit is a letter in which the Debtor instructed an acquaintance to destroy certain files and

a calendar located in his briefcases and to hide his wallet.  He specifically asked that the files be

destroyed before the briefcases could be handed over to his counsel.[3]

At the hearing on the Stay Motion on December 5, 2007, the Debtor argued that much

---

[3]It is unclear whether the Debtor penned this letter before or after the dismissal of this
case. Ostensibly, this letter was written when the Debtor understood he was still under orders
from this Court to comply with his duties as a debtor.  The duties of a debtor include maintaining
documents, records and papers which would enable a trustee to analyze property of the estate.
See 11 U.S.C. §§ 521(a)(4), 727(a)(3) and Fed. R. Civ. P. 2004(a)(4).

has changed since Birchall I. The Debtor explained that he satisfied more than half of his obligation to the Creditor when she liquidated a bank account after he voluntarily disclosed its existence. He also suggested that those funds were the property of other clients and that those clients would soon bring an action against the Creditor to recover the funds. He asserted that his incarceration has not aided the Creditor because despite his voluntary disclosures and the vigorous investigations of various law enforcement agencies, no other assets have been discovered. He contended that the failure to find additional assets supports his assertion that there are no other assets he is hiding from the Creditor. The Debtor asserted that because he is being held for civil contempt, the automatic stay applies to stop this collection and that the bankruptcy court would be a more logical forum to address his assets and debts.

The Creditor responded that there is no change of circumstances that would warrant my declining abstention in this case. She explained that the account that was discovered after the filing of Birchall I was a result of the information the Debtor gave during a recorded telephone call he made from jail. It is clear, she contended, that the account contains her money as the registration papers which the Debtor or his mother filled out to open the account explain that it contains the savings of a widowed client and her late husband. Moreover, given that his telephone calls are replete with requests to destroy documents and his wallet, there is every indication that if he were released he would continue his pattern of hiding assets.

I took the two motions under advisement. Thereafter, the Debtor filed his Schedules and Statement of Financial Affairs. In Schedule B, Personal Property, the Debtor listed assets of $3,000 and unliquidated claims worth an uncertain amount. In Schedule C, the Debtor claimed exemptions in all of his assets. In Schedule D, Creditors Holding Secured Claims, the Debtor

5

listed two creditors, the Creditor for an undetermined amount and the Internal Revenue Service for $12,774.  In Schedule E, Creditors Holding Unsecured Priority Claims, the Debtor listed a debt to the Internal Revenue Service for $22,000.  In Schedule F, Creditors Holding Unsecured Non-Priority Claims, the Debtor listed debts totaling $1,438,016, which included a debt to the Creditor in the amount of $1,172,935, many credit card debts and debts to two individuals who may have claims against the proceeds of the Swiss bank account that the Creditor obtained after dismissal of the first case.

Slightly more than 30 days after the Debtor filed this case, the Creditor filed a one sentence pleading notifying the Court that the automatic stay had been terminated by virtue of 11 U.S.C. § 362(c)(3)(a).  The Debtor filed a motion seeking a ruling that the notice is inapplicable. The Debtor argued that the stay cannot be terminated where, as it relates to his incarceration, the stay has not been applied.  Two days later, the Debtor filed a motion to re-institute the automatic stay.  In this motion, the Debtor argues that there cannot be a termination of the stay when the stay was never invoked and therefore seeks orders re-instituting the stay and applying the stay to prevent the Debtor's ongoing incarceration.

The Creditor disagreed.  In her opposition, the Creditor asserts that 11 U.S.C. § 362(c)(3)(a) clearly provides that if a debtor files for relief within one year of a prior case, the automatic stay shall terminate on the 30th day after the filing unless a party in interest seeks a continuation of the stay before the expiration of the 30 days and demonstrates that the filing was in good faith.  Because the Debtor did not move for a continuance within 30 days, she contends the Debtor ran afoul of the statute and none of his pleadings can be construed otherwise.

The docket in this case reflects that no proofs of claim have been filed and that only the

Creditor has filed a notice of appearance.  The meeting of creditors has been continued to

February 5, 2008.  The Chapter 7 trustee has not filed a response to any of the foregoing

pleadings and has not otherwise participated in the case other than to continue the earlier

scheduled meeting of creditors.

## III. ANALYSIS

The first question for consideration is whether I should abstain from this case.  Section

305 provides that a court may dismiss or suspend a case under title 11 if it would better serve the

interests of the debtor and the creditors.   Courts have looked at a variety of factors in

determining whether to abstain.  See, e.g. In re Mountain Dairies, Inc., 372 B.R. 623 (Bankr.

S.D. N.Y. 2007) and In re Fax Station, Inc., 118 B.R. 176 (Bankr. D. R.I. 1990).

In Mountain Dairies, the bankruptcy court dismissed an involuntary petition as the

petitioning creditor's claim was subject to a bona fide dispute.  Id. at 632.  The court further

ruled that even if the creditor were eligible, the court would have abstained from hearing the

case.  Id. at 634-5.  In order to arrive at that conclusion, the court reviewed the following

considerations:

> (1) economy and efficiency of administration;
> (2) whether another forum is available to protect the interests of both parties or
> there is already a pending proceeding in state court;
> (3) whether federal proceedings are necessary to reach a just and equitable
> solution;
> (4) whether there is an alternative means of achieving an equitable distribution of
> assets;
> (5) whether the debtor and the creditors are able to work out a less expensive out-
> of-court arrangement which better serves all interests in the case;
> (6) whether a non-federal insolvency has proceeded so far in those proceedings
> that it would be costly and time consuming to start afresh with the federal
> bankruptcy process; and
> (7) the purpose for which bankruptcy jurisdiction is sought.

Id. at 635.

The judge in <u>Mountain Dairies</u> found that the matter before her was a two-party dispute which easily could be resolved in state court, the forum the parties had selected in their contract. The petitioning creditor had not offered why it had not followed the forum selection clause and could not explain what relief it could obtain under the Bankruptcy Code that it could not achieve under state law. Accordingly, the court offered that it would have allowed abstention had it reached the issue.

In <u>Fax Station</u>, Judge Votolato was asked had to decide the merits of two motions to abstain filed in two cases of one debtor. In order to determine whether abstention was appropriate, he applied the same seven-factor test. 118 B.R. at 117. He found that immediately prior to the filing of the first case, an involuntary petition, a state court receivership was pending. <u>Id.</u> The filing of the second case, a voluntary petition, highlighted the fact that the disputes between the litigants were related to competing ownership claims. <u>Id.</u> at 178. Judge Votolato explained that none of the facts demonstrated that the parties were seeking meaningful bankruptcy relief. <u>Id.</u> After considering the criteria for abstention and the facts of the case, Judge Votolato granted the requests for abstention and dismissed both cases.

When I ruled from the bench in Birchall I, I granted abstention based upon many of the factors cited above. The dispute was between the Debtor and Creditor. The matter had been heavily litigated in state court, was subject to an ongoing case and presented no unique issues of bankruptcy law other than that the Debtor sought the implementation of the automatic stay to obtain his release from jail. Another significant factor was the representations the Debtor had made during his telephone calls and the fact that authorities investigating the matter appeared to

8

have made significant progress and were on the verge of a notable discovery.

With respect to this case, therefore, the question is whether there is a change of facts or circumstances that warrant a different outcome. The Debtor has filed schedules which indicate that, in addition to the debt that he owes the Creditor, the Debtor has unsecured debt of approximately $265,081.[4] More than half of that amount is for two credit card obligations. The Court assumes that these debts existed at the time of Birchall I given the dates that the Debtor provides for some of the debts and the Debtor's unlikely ability to incur such large credit card obligations during his incarceration. The docket reflects that this is a no-asset case and consistent with a notice that the Court served on all creditors, no creditors have filed claims. See Docket No. 14. Other than the Creditor, no creditor has sought to participate in these proceedings or respond to the properly served Abstention Motion.

The other notable aspect of the Debtor's Schedules is his assets. Notwithstanding that the Debtor provided a value for some of his assets ($3,000) and described others as having an uncertain/unliquidated value, he claimed exemptions in virtually all of these assets.[5] He has no income and no expenses. Accordingly, the issue of an equitable division of assets is largely moot as there are no assets to administer.

Factors 1, 2, 3 and 6 are largely met given that the state court proceeding has been

---

[4]The Debtor listed his debt to the Creditor as the original amount minus the amount in the recovered bank account. This debt, he suggests in other pleadings, may revert to its original amount because the money the Creditor recovered from the bank account is property of other clients. He lists those clients Schedule F as holding claims in uncertain/unliquidated amounts. Those creditors have not filed any pleadings in this case and no party has represented that they have commenced any other action to recover the funds now in the possession of the Creditor.

[5]The Debtor did not claim an exemption in potential claims against the Creditor and certain personal assets such as his laptop computer, hard drive and cellular telephone.

9

ongoing for some time.  It would be duplicative to have to reassess those matters in this Court by way of a § 341 meeting, certain discovery requests, <u>see</u> Fed. R. Bankr. P. 2004, and adversary proceedings.

Not included in the above-listed factors, but certainly relevant, are the particular facts of this case.  When I abstained from Birchall I, I did so based in part on the uncontested affidavit of Creditor's counsel wherein she described the highly suspicious telephone conversations the Debtor had engaged in post-petition.  In this case, Creditor's counsel again explains in an unopposed affidavit how the Debtor caused the destruction of certain records at a time when it appears he was still a debtor before this Court.[6]  The Debtor's highly suspicious actions and disregard for this Court militate against retaining the case.

Even if I were to rule otherwise, it is unlikely that the Debtor could obtain the relief he seeks, namely, a determination that the automatic stay applies such that his incarceration would be deemed a violation of the stay.  This is the Debtor's second case within one year.  Pursuant to 11 U.S.C. §§ 362(c)(3)(A) and (B), the automatic stay terminates 30 days after the filing unless a party moves to continue the stay via a motion that demonstrates that the filing was in good faith and the motion is heard within the 30 days.  The only pleading which the Debtor filed in the 30 day period was the motion requesting that the Court order the Creditor to take steps to have the Debtor released.  The Debtor did not request a continuance of the stay within 30 days after filing the petition.  The statute is quite explicit in its requirements and I cannot entertain the Debtor's request for the imposition of the stay after expiration of the 30 days.

---

[6]Even if he wrote the letter after being informed of my decision, his actions in causing the destruction of records could potentially result in a complaint seeking to deny his discharge.  <u>See</u> 11 U.S.C. § 727(a)(2)(A).

Given that no stay would apply in these proceedings after December 13, 2007, the only benefit the Debtor could receive from continuing with this case is a discharge.  The facts of this case, however, indicate that the Debtor is certain to face a nondischargeability proceeding, <u>see e.g</u>, 11 U.S.C. § 523(a)(4), if not a denial of discharge proceeding.  Depending on the outcome of these proceedings, there may be little that this bankruptcy proceeding can offer the Debtor.

Conversely, the Creditor has chosen the state court forum to pursue the Debtor.  She represents that she is making strides in that forum and wishes to remain there.  The parties are located there and no other creditor is pursuing the Debtor at this time.  Therefore, it is in the Creditor's best interest for me to abstain.  Taking all of these factors into consideration, the best interest of the creditors and the Debtor is to have the request for abstention granted.

## IV.  CONCLUSION

For the reasons set forth above, the Court will enter an order granting abstention and mooting all subsequently filed motions.

William C. Hillman
U.S. Bankruptcy Judge